IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | CRIMINAL NO. DKC-13-598 |
| | * | |
| **KIRK L. PRICE,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | * | |

## MEMORANDUM OPINION

The Court has received Defendant's Emergency Motion to Reopen Detention Hearing ("Defendant's Motion"). The Court has reviewed Defendant's Motion and the opposition thereto. ECF Nos. 58 and 59.[1] No hearing is deemed necessary. Local Rules 105.6 and 207 (D. Md.). The Court hereby GRANTS Defendant's Motion. A separate Order outlining the terms of release will issue.

### I.     Relevant Procedural History

On March 14, 2014, Defendant pled guilty to (1) possession with intent to distribute methylenedioxymethamphetamine ("MDMA") and (2) possession of a firearm as a felon. ECF No. 19. Defendant was sentenced to 54 months' incarceration and three years' supervised release to begin upon release from imprisonment. ECF No. 41. In March 2017, Defendant commenced his supervised release. Def.'s Mot. 2, ECF No. 58. On February 6, 2020, the U.S. Probation and Pretrial Services filed a violation report based on Defendant being charged with

---

[1] Defendant also filed an Emergency Motion to Order the Bureau of Prisons and/or US Marshals Service to Transport Mr. Price to this District, to Release Mr. Price from Custody, or to make him Available for a Telephonic Hearing on his Pending Motion for Release Forthwith, ("Defendant's Second Motion"), ECF No. 60. Given the Government's "willin[ness] to consider appropriate release conditions for [Defendant], Gov't Resp. to Mot. to Reopen Det. Hr'g 3, ("Government's Response"), ECF No. 59, a response from the Government is not necessary to make a decision.

(1) conspiracy to transport stolen cars under 18 U.S.C. § 371 and (2) transporting stolen cars in violation of 18 U.S.C. 2312. *Id.*

On February 10, 2020, after a detention hearing before this Court, an order of detention was entered. ECF No. 52; Gov't Resp. 1. The Court found that: "Defendant has failed to meet his burden of showing by clear and convincing evidence that he is neither a risk of flight or [a] danger to the community. Defendant also refused to provide USPO with [an] address." *Id.* Further, the Court found that the reasons for detention include . . . "[Defendant is] subject to lengthy period of incarceration if convicted; [Defendant has a] prior criminal history; [Defendant participated] in criminal activity while on probation, parole, or supervision; [Defendant has a] history of alcohol or substance abuse; and [Defendant has a] prior failure to appear in court as ordered." *Id.* Following the detention hearing, Defendant was transferred to the Western District of Pennsylvania to appear on the indictment. Def.'s Mot. 2. On April 7, 2020, Defendant appeared for a detention hearing before the Western District of Pennsylvania which "released [Defendant] on certain stringent conditions, including a $10,000.00 unsecured bond, home detention, location monitoring, and residing with his fiancée at a particular residence in Waldorf, Maryland." Gov't Resp. 2, ECF No. 59. Defendant is currently detained at the Northeast Ohio Correctional Center ("NEOCC") as a result of this Court's Order.

Defendant now seeks review of this Court's order of detention due to (1) "the charges in the Western District of Pennsylvania, which triggered the [Violation of Supervised Release], are weak: a fact not disputed by the prosecutors who investigated and brought the Pennsylvania case" and (2) the outbreak of the Corona virus ("COVID-19"). Def.'s Mot. 1. Defendant now requests that the Court: "(1) order the Bureau of Prisons to transport [Defendant] to the District of Maryland forthwith for his detention hearing; (2) order [Defendant's] release from NEOCC,

where he is currently being held, or (3) hold a prompt hearing in which [Defendant] can participate by telephone from NEOCC." Def.'s Second Mot. 1, ECF No. 60.

**II.   Analysis**

Defendant contends that his release is necessary due to the outbreak of COVID-19. Def.'s Mot. 2. Specifically, Defendant avers that the outbreak constitutes a compelling reason under 18 U.S.C. § 3142(i). Defendant further avers that Defendant is not a flight risk nor a danger to the community. *Id.* at 3–9. The Government avers that "[it] does not believe that [Defendant] –*at this time*– has met his burden . . . by clear and convincing evidence that he is neither a flight risk nor a community danger." Gov't Resp. 2. The Government further states:

> Regardless of the strength of the Pennsylvania case, the Government acknowledges that [Defendant's] most serious supervised release violations flow from the Pennsylvania indictment, and the Pennsylvania magistrate judge has seen fit to permit [Defendant's] release on stringent conditions. Given this fact, and the COVID-19 situation, the *Government is willing to consider* appropriate release conditions for [Defendant].

*Id.* at 3 (emphasis added).

Under the Bail Reform Act, a detention hearing determination:

> [M]ay be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (emphasis added). Further, "[a] judicial officer may … permit the temporary release of the person, in the custody of a United States marshal or another appropriate person … for [a] compelling reason." 18 U.S.C. § 3142(i).

a. **The COVID-19 Pandemic**

The presence of the COVID-19 creates a "material bearing" on the issue of whether there are conditions of release that can protect the community from the danger that Defendant presents. Yet, this Court has stated that the mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *See United States v. Derek Crosby*, No. ELH-19-0286, 2020 WL 1638685 (D. Md. Apr. 2, 2020) (denying the defendant's motion despite his previous diagnosis of pneumonia, asthma, and a need for an albuterol inhaler); *United States v. Ronald McCormick*, GLR-19-318 (D. Md. Apr. 2, 2020) (denying the defendant's motion despite testing positive for COVID-19); *United States v. Jermaine Pate*, PWG-17-236 (D. Md. Apr. 7, 2020) (denying the defendant's motion even though he suffered from asthma); *United States v. Kair Mugaddim*, TDC-19-380 (D. Md. Apr. 9, 2020) (denying the defendant's motion because the defendant failed to show why he was an at-risk inmate); *United States v. Terrell West*, No. ELH-19-364, 2020 WL 1820095 (D. Md. Apr. 10, 2020) (denying the defendant's motion despite testing positive for coronavirus); *United States v. Bernadette Attia*, PWG-19-193 (D. Md. Apr. 13, 2020) (denying the defendant's motion even though he suffered from asthma and migraines); *United States c. Damien Smith*, SAG-20-47 (D. Md. Apr. 14, 2020) (denying the defendant's motion even though he suffered from asthma); *United States v. Deante Duckett*, No. PWG-19-229 (D. Md. Apr. 17, 2020) (denying the defendant's motion even though he suffered from bacterial infections).

In support of Defendant's Motion, Defendant cites to studies and statistics regarding the impact of COVID-19 in detention centers. Def,'s Mot. 11–12. Defendant further cites to recent cases in this district and other districts releasing detainees because of COVID-19. *Id.* at 12–13. Recently, in a civil case filed in the United States District Court for the District of Columbia, the

court granted in part, a Motion for a Temporary Restraining Order against the D.C. Department of Corrections ("DOC"), based on a review by independent investigators of the conditions at DOC. *Banks v. Booth*, CKK-20-849 (D.D.C. Apr. 19, 2020). The court found that there was a likelihood of success on the merits of the claim that the conditions of confinement violated the United States Constitution by failing to adequately protect the detainees' health and safety. *Id*. According to the investigators, 65 out of approximately 1,020 inmates tested positive for COVID-19. *Id.* As later commented upon by the Honorable Theodore C. Chuang of this Court:

> . . . [T]he D.C. Jail had failed to implement contact tracing when correctional staff tested positive; had been slow to respond to inmates displaying symptoms of COVID-19 such as fever and coughing; did not properly seal off quarantined inmates from the general population and require proper use of masks and gloves for those present in the quarantine unit; and left inmates in isolation for having tested positive in draconian conditions without access to showers or laundry services. It also found that D.C. Jail had acted slowly to, and had failed to, operationalize and enforce social distancing measures needed to avoid an unreasonable risk to the health of detainees, as illustrated in part by the fact that it allowed 40 inmates to congregate three weeks into the pandemic. The court also found that there were likely errors in the use of thermometers to screen income[ing] visitors and staff, and some housing units lacked sufficient cleaning supplies and sufficient guidance on how to sanitize that resulted in 'challenges with cleanliness' outside of inmates' cells. The court therefore concluded that the evidence supported the conclusion that D.C. Jail acted with deliberate indifference to inmate health and safety because it was aware of the risks of COVID-19 but 'disregarded those risks by failing to take comprehensive, timely, and proper steps to stem the spread of the virus.' Although the court did not order the immediate release or transfer of detainees, it ordered as a first step certain remedial actions, including that the D.C. Jail improve the triage process for suspected cases of COVID-19, provide proper cleaning supplies to each unit in the facility, and implement social distancing measures.

*United States v. Demetrius Keaton*, TDC-18-215 (Apr. 23, 2020) (internal citations omitted).

Although, the D.C. Court's ruling does not require the Court to release every inmate, the Court

must take into consideration the conditions of the DOC to determine whether it constitutes a compelling reason to release Defendant. At the time of this writing, the Court finds that the poor conditions of the DOC weigh in favor of releasing Defendant from detention with conditions.

### b. Bail Reform Act

Despite the Court's determination regarding the conditions of the DOC, the Court still has a duty to balance the factors of the Bail Reform Act, with the overlay of concerns about the health and safety of Defendant and the community at large. Here, Defendant has been charged with violating his supervised release for charges involving property crimes. The Court finds that these charges are not violent in danger. Although the decision to release Defendant by the Western District of Pennsylvania is not binding, as the charging jurisdiction, the Court certainly takes the decision into consideration.

During the detention hearing before the Western District of Pennsylvania, the Government asserted that the basis for its request for detention was Defendant's risk of flight. *See* Tr. of Proceedings on April 7, 2020, ECF No. 58–1, Ex. 1. At no point during the hearing did the government argue that Defendant was a danger to the community. Although the Government asserts that it does not believe "at this time" that Defendant has proved by clear and convincing evidence that he is neither a flight risk nor a community danger, the Government failed to provide any support for its contention. In fact, according to Defendant, counsel for the Government stated on the record that "Officer McWilson [Defendant's probation officer] told me when we were talking before the hearing that [Defendant] had been a model person under her supervision, up until recently." Def.'s Mot. 7.

The Court further finds that Defendant has proven by clear and convincing evidence that there are conditions of release that could reasonably assure Defendant's appearance at court.

Defendant is a lifelong resident of Maryland. Def.'s Mot. 5. His entire family including his two children live in Maryland. *Id.* Defendant has been residing with his fiancée in Waldorf, Maryland for three months. *Id.* Defendant currently pays rent, tuition, and childcare expenses for his children. *Id.* All of which show Defendant has commitments which should motivate him to act responsibly in terms of appearing in court when told to do so. Further, Defendant does not currently own a passport and has never travelled outside of the United States. *Id.* Defendant also has a position of employment at Goode Trash Company waiting for him. *Id*. at 6. Finally, Officer McWilson has approved a third-party custodian for Defendant.[2] Def.'s Second Mot. 3. With at-home incarceration, confining Defendant to the house 24 hours a day, seven days a week, the Court finds that release from DOC, where the risk of infection is substantial, substantially decreases the risk to Defendant and the community. *See United States v. Demetrius Keaton*, TDC-18-215 (D. Md. Apr. 23 2020) (citing *United States v. Green*, No. 19-539-CCB, 2020 WL 1873967, at *3 (D. Md. Apr. 15, 2020) (considering, under the related provision of 18 U.S.C. § 3142(i), the extent to which the release plan would mitigate or exacerbate the COVID-19 risk to the defendant and the likelihood that release would increase the risk of COVID-19 to others).

Given the current situation of the DOC, combined with the Court's findings regarding Defendant's risk of flight and danger to the community, the Court concludes that Defendant's release is warranted, with stringent conditions

---

[2] At the time of the Government's Motion, the Government averred that U.S. Parole and Probation had not confirmed the viability of the fiancée's residence. Gov't Mot. 3. Upon the Court speaking with Officer McWilson via email, the Court has been notified that a third-party custodian, T'Anya Dicks has been approved. Officer McWilson also confirmed that Ms. Dicks' home is a suitable home for self-quarantine.

### III. Conclusion

Defendant has demonstrated that the changed circumstances created by the COVID-19 crisis sufficiently tips the scales of detention to reverse the earlier decisions by the Court. Accordingly, Defendant's Motion is Granted.

April 28, 2020                                                              /s/
                                                           Charles B. Day
                                                           United States Magistrate Judge

CBD/hjd